**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

SALLIE ANN RANGEL and                          :
SERGIO RANGEL, by next friend,                 :
SALLIE ANN RANGEL,                             :
                                               :        CIVIL ACTION FILE
        Plaintiffs,                            :        No. 2:07-CV-0142-RWS
                                               :
     v.                                     :
                                               :
FORSYTH COUNTY, FORSYTH                         :
COUNTY SHERIFF TED                              :
PAXTON, in his official Capacity,              :
DEPUTY SHERIFF TERRI                            :
WRIGHT f/k/a TERRI PRATT, in                   :
her official capacity and individual           :
capacity, DEPUTY SHERIFF A.                     :
TAYLOR, in her official capacity               :
and individual capacity,                        :
FIREFIGHTER/EMS WILLIAM                         :
EGGERT, in his official capacity               :
and individual capacity,                        :
FIREFIGHTER/EMS BRANDON                         :
RYAN, in his official capacity and             :
individual capacity,                            :
FIREFIGHTER/EMS MATHIS M.                       :
GROOVER, in his official capacity              :
and individual capacity, and FIRE              :
CHIEF DANNY BOWMAN, in                          :
his official capacity,                          :
                                               :
        Defendants.                            :
                                               :
                                               :
                                               :

## ORDER

Now before the Court are the following motions: (i) Defendants' Motion for Judgment on the Pleadings [10] and (ii) Defendants' Motion for Summary Judgment [29]. After reviewing the record, the Court enters the following Order.

### Background

Plaintiffs brought this action against Forsyth County; Forsyth County Sheriff Ted Paxton; Deputy Sheriff Terri Wright; Deputy Sheriff A. Taylor; Firefighters/EMS William Eggert, Brandon Ryan and Mathis M. Groover; and Fire Chief Danny Bowman. Plaintiffs allege that Plaintiff Sallie Rangel ("Ms. Rangel") was forced to receive medical attention that she did not want and that excessive force was used during her arrest. In addition to bringing claims alleging false arrest, false imprisonment, malicious prosecution, failure to train, and excessive force under 42 U.S.C. § 1983, Plaintiffs bring claims alleging civil conspiracy, assault and battery, trespass, intrusion, intentional infliction of emotional distress, false arrest, false imprisonment and malicious prosecution under state law.

2

This case comes before the Court on Defendants' Motion for Summary Judgment, which was accompanied by Defendants' Statement of Undisputed Material Facts. Plaintiffs, however, have failed to respond to Defendants' Statement of Undisputed Material Facts [29]. Local Rule 56.1B requires a respondent to a summary judgment motion to include a response to the movant's statement of undisputed facts. L.R. 56.1(B)(2)(a). The response must "contain individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts." Local Rule 56.1(B)(2)(a)(1). The rule goes on to say that the court

> will deem each of the movant's facts as admitted unless the respondent (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1 B.(1).

L.R. 56.1(B)(2)(a)(2). Because Plaintiffs failed to file any response to Defendants' Statement of Undisputed Facts [29], the Court is constrained to accept Defendants' Statement of Undisputed Facts as admitted. Reese v. Herbert, 527 F.3d 1253, 1267-8 (11th Cir. 2008) (holding that Local Rule

3

56.1(B)(2)(a)(2) is mandatory). Having deemed the Defendants' Statement of Undisputed Material Facts as admitted, the pertinent facts are as follows.

This case arises from an incident occurring on December 22, 2005. That evening Ms. Rangel became unconscious in her kitchen after consuming a combination of medication and wine. Plaintiff Sergio Rangel ("Sergio"), Ms. Rangel's eight-year-old son, found his mother on the floor and called a family friend for help. The friend, in turn, asked her husband to call 911.

Defendant Paramedic Brandon Ryan and Defendant Firefighters William Eggert and Mathis Groover arrived at Plaintiffs' house in response to the 911 call. Sergio answered the door for the EMTs, who entered the house to find both Plaintiffs crying. Ms. Rangel was either unable or unwilling to answer basic orientation questions posed by Defendant Ryan. As a result, the EMTs believed they had a duty to treat Ms. Rangel despite her verbal requests that they leave. Defendants were unable to take Ms. Rangel's blood pressure, pulse, respiration rate, or blood glucose level because Ms. Rangel would not allow them to do so. Firefighter Groover stayed primarily in another room of the house with Sergio.

At some point during the initial assessment, Ms. Rangel got up, ran across the kitchen, and punched paramedic Brandon Ryan in the chest. After being placed back in a kitchen chair, Ms. Rangel kicked the chair out from underneath her, and as a result, she and Defendant Ryan fell to the floor. After that, Ms. Rangel was placed back in the kitchen chair, held there by Defendants, and later handcuffed.

Defendants called for a sheriff's unit at Plaintiffs' residence. Defendant Wright arrived at Plaintiffs' residence to find firefighters restraining Ms. Rangel on the floor. Then, Defendant Taylor arrived at Plaintiffs' residence. The firefighters and deputies tried to calm Ms. Rangel and advised her she needed to be treated at the hospital. Defendant Taylor reported to her supervisor that Ms. Rangel was being combative and was being taken to the hospital to be medically cleared and then to jail. Defendant Wright escorted Ms. Rangel to Northside Hospital where medical treatment was provided, including drawing blood. Then, Defendant Wright transferred Ms. Rangel to Forsyth County jail where she was charged for obstructing an EMT. This action followed.

AO 72A
(Rev.8/82)

**Discussion**

## I.       Preliminary Matters

In commendable fashion, Plaintiffs concede that they cannot sustain federal law claims against Sheriff Paxton and his deputies in their official capacities. Plaintiffs also concede that Defendants are entitled to summary judgment on all state claims for which they were sued in their official capacity, the § 1985 civil conspiracy claim, and all state law claims against Forsyth County. (See Pls.' Br. in Resp. to Defs.' Mot. for Summ. J. [34] at 2.) Also, "Plaintiffs do not contest summary judgment to Forsyth County on their failure to train claim." (Id. at 12.) Accordingly, insofar as Defendants move for summary judgment on the above referenced claims, Defendants' Motion is **GRANTED**.

Resolving the above referenced claims limits this lawsuit to the following claims: all 42 U.S.C. § 1983 claims and state law claims against Defendants Wright/Pratt, Taylor, Eggert, Ryan, and Groover in their individual capacities and federal claims against Defendant Bowman in his official capacity.

AO 72A
(Rev.8/82)

## II. Defendants' Motion for Summary Judgment

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.` Ed. 2d 265 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

AO 72A
(Rev.8/82)

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the

AO 72A
(Rev.8/82)

nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

**B.     Defendants' Motion for Summary Judgment**

Defendants move for summary judgment, arguing that Plaintiffs have failed to demonstrate that Defendants violated Plaintiffs' constitutional rights or violated any federal or state law.  For the reasons provided below, the Court finds Defendants are entitled to summary judgment on all claims.

**III.    Section 1983 Claims Against Defendants Wright, Taylor, Eggert, Ryan, and Groover in their Individual Capacities**

Defendants raise qualified immunity as a defense to Plaintiffs' § 1983 claims against them in their individual capacities.  Because Defendants invoke qualified immunity, the Court must first examine the contours of the qualified immunity doctrine.

**A.     Qualified Immunity Standard**

Qualified immunity provides "complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1346 (11th

AO 72A
(Rev.8/82)

Cir. 2002) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).  Its purpose is to "allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law."  <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).

Qualified immunity is a question of law for the court.  <u>Post v. City of Fort Lauderdale</u>, 7 F.3d 1552, 1557 (11th Cir. 1993).  To be entitled to qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  <u>Lee</u>, 284 F.3d at 1194.  The burden then shifts to the plaintiff.  <u>Lee</u>, 284 F.3d at 1194.  There is a two-part test to determine whether a defendant is entitled to qualified immunity.  First, a court asks " 'whether [the] plaintiff's allegations, if true, establish a constitutional violation.' "  <u>Vinyard</u>, 311 F.3d at 1346 (quoting <u>Hope v. Pelzer</u>, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)).  Second, after sufficiently stating a constitutional violation, a court must ask whether the right was "clearly established."  <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).  A right is clearly established if its

contours are "sufficiently clear that a reasonable official would understand what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).  The salient question is whether the state of the law at the time of the alleged violation gave officials "fair warning" that their acts were unlawful.  Hope, 536 U.S. at 740; Holmes v. Kucynda, 321 F.3d 1069, 1078 (11th Cir. 2003); see also Vinyard, 311 F.3d at 1350-53 (articulating a tripartite analytical framework for ascertaining whether right is "clearly established").

While materially similar precedent or "broad statements of principle" can establish a right with sufficient clarity to deny an officer qualified immunity, they are not in all instances required to provide officials with the requisite notice.  See Vinyard, 311 F.3d at 1350-52.  In some cases, "the words of a federal statute or federal constitutional provision may be so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful."  Id. at 1350.

AO 72A
(Rev.8/82)

**B.    Whether the Allegations, if Proven, Amount to a Constitutional Violation**

1.    <u>False Arrest</u>

In the context of a claim for false arrest, an officer is entitled to qualified immunity where that officer had "arguable probable cause" to make the arrest. In other words, where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest" the plaintiff, then the officer is entitled to qualified immunity.  <u>Davis v. Williams</u>, 451 F.3d 759, 762-63 (11th Cir. 2006) (quoting <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1232 (11th Cir. 2004)); <u>see</u> <u>also</u> <u>Von Stein v. Brescher</u>, 904 F.2d 572, 579 (11th Cir. 1990).   What constitutes probable cause to arrest is the information known to the defendant at the time of the arrest, and not the facts "known to the plaintiff then or those known to a court later." <u>Jones</u>, 174 F.3d at 1283 n.4 (quoting <u>Hunter v. Bryant</u>, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991)).  With these foundational principles in mind, the Court turns to examine the merits of Plaintiffs' individual-capacity claims against Defendants.

AO 72A
(Rev.8/82)

Defendants assert that, based on the information available at the time of the incident, there was at least an arguable basis to believe that Ms. Rangel had committed the crimes of simple battery and obstruction of EMS officers.[1] Under Georgia law, a person commits the crime of simple battery when he or she (1) intentionally makes physical contact of an insulting or provoking nature with the person of another; or (2) intentionally causes physical harm to another. O.C.G.A. § 16-5-23. Also, under Georgia law, a person commits the crime of obstructing emergency medical technicians when he or she knowingly and willfully obstructs or hinders any emergency medical technician, any emergency medical professional, or any properly identified person working under the direction of an emergency medical professional in the lawful discharge of the official duties of such emergency medical technician, emergency medical professional, or properly identified person working under the direction of an emergency medical professional is guilty of a misdemeanor. O.C.G.A. § 16-10-24.2(b).

---

[1]Defendants also allege child endangerment under O.C.G.A. § 16-12-1 and reckless conduct, but the Court does not find it necessary to examine if these would also be the basis for probable cause for Plaintiff's arrest.

AO 72A
(Rev.8/82)

The Court concludes that Defendants had an arguable basis to believe that Ms. Rangel had committed the crimes of simple battery and obstruction of an emergency medical technician. Probable cause exists if, "at the moment the arrest was made, the facts and circumstances within the officer['s] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." Holmes v. Kucynda, 321 F.3d 1069, 1079 (11th Cir. 2003) (citations and quotations omitted). "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." Adams v. Williams, 407 U.S. 143, 149, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972). Of course, for Defendants to be entitled to qualified immunity, they "need not have actual probable cause but only 'arguable probable cause.'" Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997) (emphasis added). Because only arguable probable cause is required, "the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." Id. Thus, "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is

14

present' are entitled to immunity." <u>Hunter v. Bryant</u>, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (citation omitted).

Here, Defendants Wright, Taylor, Eggert, Ryan, and Groover could have reasonably concluded that Ms. Rangel had committed the crimes of simple battery and obstruction of an emergency medical technician. First, Ms. Rangel punched EMS personnel. Some of the Defendants were present to experience this first hand and others reasonably relied on the witness statements of others in support of the claim. E.g. <u>McCauley v. State</u>, 22 Ga. App. 600, 601, 475 S.E. 2d 669 (1996) (wife's statement to officer that her husband struck her was sufficient to

create probable cause to arrest defendant); <u>United States v. Williams</u>, 185 F. App'x 866, 870-71 (11th Cir. 2006) (unpublished) (officer had probable cause to believe defendant had committed crime of possession of a firearm by a convicted felon based upon witness statement that he observed the convicted felon placing a shotgun in the car's trunk combined with officer's observation of shotgun shell inside car window); cf. <u>Rankin v. Evans</u>, 133 F.3d 1425, 1441 (11th Cir. 1998) (stating that an officer is generally entitled to rely on a victim's criminal complaint as support for probable cause).

AO 72A
(Rev.8/82)

Ms. Rangel was combative in other ways as well and had to be restrained so that emergency personnel were not injured. Accordingly, the Court finds that there was arguable probable cause that Ms. Rangel had committed simple battery since she "intentionally [made] physical contact of an insulting or provoking nature with the person of another" in violation of O.C.G.A. § 16-5-23. Also, Defendants had arguable probable cause to believe that Ms. Rangel "knowingly and willfully obstruct[ed] or hinder[ed] any emergency medical technician, any emergency medical professional, or any properly identified person working under the direction of an emergency medical professional in the lawful discharge of the[ir] official duties" in violation of O.C.G.A. § 16-10-24.2(b).

### 3.    False Imprisonment

The Court next addresses Plaintiffs' § 1983 false imprisonment claims against Defendants. "A false imprisonment claim under [§] 1983 is based on the protection of the Fourteenth Amendment against deprivations of liberty without due process of law." Ortega v. Christian, 85 F.3d 1521, 1526 (11th Cir. 1996). To establish a false imprisonment claim under § 1983, Plaintiff must meet the

elements of common law false imprisonment[2] and establish that the

imprisonment resulted in a violation of her due process rights under the

Fourteenth Amendment. See White v. Thompson, No. 08-12045, 2008 U.S.

App. LEXIS 23872, 2008 WL 4823988, *1 (11th Cir. Nov. 07, 2008) (per

curiam). Negligent conduct is not enough to give rise to a § 1983 claim for false

imprisonment; "a showing of deliberate indifference is required to establish a

violation of substantive due process rights protected by the [F]ourteenth

[A]mendment." Cannon v. Macon County, 1 F.3d 1558, 1563 (11th Cir. 1993).

Plaintiffs allege that Defendants lacked probable cause which lead to her

false arrest and her false imprisonment. However, as stated above, the Court

finds that Defendants had arguable probable cause to arrest Sallie Rangel under

the circumstances existing at the time. In addition, the undisputed facts do not

indicate that Defendants acted with deliberate indifference in detaining Plaintiff.

Instead it appears that Defendants simply followed protocol in treating an

individual that they felt required medical attention. Therefore, the Court finds

that the evidence does not support a finding of a due process violation and

---

[2]Plaintiff must prove "(1) intent to confine, (2) acts resulting in confinement, and (3) consciousness of the victim of confinement or resulting harm." Ortega, 85 F.3d at 1526 n.2.

concludes that Plaintiffs' false imprisonment claim under § 1983 must fail. Accordingly, Defendants' motion as to Plaintiffs' § 1983 false imprisonment claim is **GRANTED**.

### 4.    Excessive Force

Plaintiffs also contend that Defendants used excessive force in the course of Ms. Rangel's arrest.  Specifically, Ms. Rangel asserts that handcuffs were placed on her too tightly causing numbness in her hands and she was held down in a kitchen chair causing injury to her coccyx.  "[E]xcessive force claims ... refer to unreasonable force or physical contact exerted by law enforcement agents in the context of arrests, investigatory stops, and seizures of people." Crosby v. Paulk, 187 F.3d 1339, 1351 (11th Cir.1999).  "In determining if force [used during an arrest] was reasonable, courts must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted."  Draper v. Reynolds, 369 F.3d 1270, 1277-78 (11th Cir.2004) (internal quotation omitted); see also Graham v. Conner, 490 U.S. 386, 396 (1989) (use of force appropriate when the individual "is actively resisting arrest or attempting to evade arrest by flight").

18

AO 72A
(Rev.8/82)

Plaintiffs have not come forth with sufficient evidence to establish that the amount of force used by Defendants was disproportionate to the need for that force in light of the fact that Ms. Rangel was combative to emergency rescue personnel and under the influence of alcohol and medication. Defendants only used such force as was required to prevent Ms. Rangel from injuring herself or one of the emergence medical personnel on the scene. Accordingly, insofar as Defendants move for summary judgment on Plaintiffs' excessive force claims, their Motion is **GRANTED**.

     5.   <u>Malicious Prosecution</u>

To prove a § 1983 malicious prosecution claim, a plaintiff must show the following: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor[3]; and (4) caused damage to the plaintiff accused." <u>Kjellsen v. Mills</u>, 517 F.3d 1232, 1237 (11th Cir. 2008). Because lack of probable cause is a required element to prove a § 1983 claim for malicious prosecution in violation of the Constitution, the existence of probable cause in

---

[3]The record is not clear as to how the criminal prosecution against Ms. Rangel terminated.

AO 72A
(Rev.8/82)

this case defeats the claim.  <u>See</u> <u>Wood v. Kesler</u>, 323 F.3d 872, 881-82 (11th Cir. 2003).  Accordingly, insofar as Defendants move for summary judgment on Plaintiffs' malicious prosecution claims, their Motion is **GRANTED**.

### 6.    <u>Unwanted Medical Care</u>

Ms. Rangel asserts that on the evening in question she was exercising her "statutory right to refuse medical care."  (Pls.' Br. In Resp. To Defs.' Mot. For Summ. J. [34] at 5.)  She relies, in part, on <u>In re L.H.R.</u>, 253 Ga. 439 (1984), which held, among other things, that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment. In fact, courts have generally recognized that "a *competent* adult patient has the right to refuse medical treatment in the absence of conflicting state interest."  Id. at 446 (emphasis added).

The Court finds that Plaintiffs have failed to show that Ms. Rangel was competent to refuse medical care when the emergency personnel arrived on the scene.  Defendants were attempting to ascertain her level of competency when she struck Defendant Ryan, conduct that served as probable cause for the offenses for which she was ultimately arrested.  Based upon the report that Ms.

20

Rangel had been unconscious, that she had been drinking wine and taking medication, and that she was alone with a minor child, it was reasonable for the emergency personnel to try to evaluate her mental status before abandoning her under those conditions. Based on her conduct up to and through the time that she struck Defendant Ryan, Defendants could not reasonably conclude that she was competent.

Even if Ms. Rangel had been competent to refuse treatment, her rights would have to be balanced against conflicting state interests. Under the circumstances of this case, when one considers the level of intrusion on Ms. Rangel's privacy for the medical personnel to check her vital signs and ask questions to determine mental status, the state's interest in preserving life would likely prevail over Ms. Rangel's privacy interests. Defendants did not know how much alcohol or medication Ms. Rangel had consumed, but knew the combination was enough to make her become unconscious. They were attempting to evaluate the risks to Ms. Rangel and were thwarted by her conduct. The need for evaluation of Ms. Rangel was heightened when the decision to arrest her was made. The state's interest in preserving life extends to ensuring that those admitted to jail do not need immediate medical care, as such treatment

AO 72A
(Rev.8/82)

and care may not be readily available.  Indeed, were the State to be deliberately

indifferent to the health of those it detains, it could be subject to liability based

on that indifference.

Based on the foregoing, Plaintiffs have failed to establish that Ms.

Rangel's right to refuse medical treatment was violated.

### C.     Whether the Right is Clearly Established

Having concluded that Plaintiffs have failed to come forth with sufficient

evidence of a constitutional violation, Defendants are entitled to qualified

immunity on all of Plaintiffs' claims under § 1983.  Alternatively, for the same

reasons as stated above, the Court concludes that Plaintiffs have failed to

demonstrate that Defendants were on fair notice that their alleged conduct

violated the Plaintiffs' rights under § 1983.  Accordingly, Defendants are

entitled to qualified immunity.  To the extent that Defendants move for summary

judgment on Plaintiffs' § 1983 claims, their Motion is **GRANTED**.[4]

----

[4] In view of the Court's ruling above granting Defendants summary judgment on Plaintiffs' primary § 1983 claims, no civil conspiracy can lie.  To establish a civil conspiracy under §§ 1983 or 1985, Plaintiffs must present evidence that Defendants acted in concert and that some overt act was done in furtherance of the conspiracy which resulted in Plaintiffs' deprivation of a constitutional right.  Hinkle v. City of Clarksburg, 81 F.3d 416, 421-23 & n. 4 (4th

**IV.     State Law Claims against Defendants Wright, Taylor, Eggert, Ryan, and Groover in Their Individual Capacities**

The Georgia Constitution provides that state officers and employees "may be liable for injuries and damages [only] if they act with actual malice or with actual intent to cause injury in the performance of their official functions." GA. CONST. art. I, § 2, ¶ IX(d).  Plaintiffs do not dispute that Defendants were acting in the performance of their discretionary duties as a state official at the time of the arrest.  Thus, to pierce Defendants's official immunity, Plaintiffs must demonstrate that Defendants acted with actual malice.  Adams v. Hazelwood, 271 Ga. 414, 520 S.E.2d 896, 898 (1999).  The Supreme Court of Georgia has explained that "'actual malice' requires a deliberate intention to do wrong and denotes 'express malice or malice in fact.'"  Id. (quoting Merrow v. Hawkins, 266 Ga. 390, 467 S.E.2d 336, 338 (1996) (citation omitted)).

Plaintiffs argue that actual malice can be shown by a lack of probable cause, excessive force used during the arrest, and the administration of unwanted

---

Cir.1996).  Here, besides failing to make any allegations in support of their conspiracy claim, Plaintiffs have failed to come forth with sufficient evidence of a deprivation of a constitutional right for the reasons stated above.

medical treatment.  Having thoroughly reviewed the record in a light most

favorable to Plaintiffs, the Court concludes that no evidence supports the

inference that Defendants possessed a "deliberate intention to do wrong" in

entering Plaintiffs' home in response to a 911 call and trying to provide medical

attention.  Accordingly, insofar as Defendants move for summary judgment on

Plaintiffs' claims of  assault and battery, trespass, intrusion, intentional infliction

of emotional distress, false arrest, false imprisonment and malicious prosecution,

their Motion is **GRANTED**.

## VI.    Section 1983 Official Capacity Claim against Chief Bowman

Plaintiffs appear to have abandoned their official capacity claims against

Chief Bowman.  (See Pls.' Br. In Resp. To Defs.' Mot. for Summ. J. [34] at 2.)

In any event, Plaintiffs would be required to show that the County was directly

at fault for a constitutional deprivation.  Mandel v. Doe, 888 F.2d 783, 792 (11th

Cir. 1989).  For the same reasons as stated above, the Court concludes that

Plaintiffs have failed to present evidence of an underlying constitutional

violation, a failure to train claim cannot be maintained.  Accordingly, insofar as

Defendants move for summary judgment on Plaintiffs' official capacity claims

against Chief Bowman, their Motion is **GRANTED**.

AO 72A
(Rev.8/82)

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment [29] is hereby **GRANTED**. The **CLERK** is **DIRECTED** to enter judgment in favor of all Defendants and against Plaintiffs in this action. In light of the Court's ruling, Plaintiff's "Motion for Judgment on the Pleadings" [10] is **DENIED as moot**.

**SO ORDERED** this  10th  day of February, 2009.


**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)